# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **FRANCES A. THOMASSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. CIV-04-550-P** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The claimant, Frances A. Thomasson, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits under the Social Security Act. The claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred, because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform her past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account her age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on January 10, 1953, and was 51 years old at the time of the hearing before the ALJ. She has a ninth grade education and past relevant work experience as a hospital housekeeper. The claimant has been unable to work since October 15, 1992, because of a seizure disorder.

**Procedural History**

On February 14, 2003, the claimant filed her application for supplemental security income payments pursuant to Title XVI (42 U.S.C. § 1381 *et seq*.). The application was denied in its entirety initially and on reconsideration. A hearing was held on March 10, 2004, in Ada, Oklahoma, before ALJ Eleanor T. Moser. By decision dated July 13, 2004, the ALJ found the claimant was not disabled at any time through the date of the decision. On October 29, 2004, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found the claimant had the residual functional capacity ("RFC") to perform work at all exertional levels, but she was limited to jobs that did not involve climbing or balancing and those with work settings free from unprotected heights, chemical fumes, moving machinery, and hazardous machinery. The ALJ concluded the claimant was not disabled and could perform her past relevant work as a hospital housekeeper (Tr. 20).

**Review**

The claimant asserts that the ALJ erred: (i) by finding that she did not meet a listing; and, (ii) by disregarding her treating physician's opinion. The undersigned Magistrate Judge finds the claimant's second contention dispositive.

The claimant asserts that the ALJ failed to properly weigh the opinions of her treating physician, Dr. Fred Wallace, D.O., *i. e.*, that the ALJ failed to follow the treating physician analysis as set forth in *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003). The opinions from Dr. Wallace consist of progress notes from the claimant's visits from March 2002 through January 2004, a Verification of Disability signed by Dr. Wallace in July 2003 at the request of the Chickasaw Nation Division of Housing, and an RFC Questionnaire completed by Dr. Wallace in March 2004.

Progress notes from March 2002 show that Dr. Wallace diagnosed the claimant with seizure disorder and prescribed her Tegretol (Tr. 108). In January 2003 Dr. Wallace signed a Verification of Disability for the Chickasaw Nation Division of Housing indicating that the claimant suffered from seizure disorder and met the definition of disability, meaning she had the "inability to engage in any substantial gainful activity by reason of any medical determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." (Tr. 173). The claimant returned in March 2003, and she reported that her last seizure was on February 26, 2003, and it had been a "big one." Dr. Wallace assessed the claimant with seizure disorder and again prescribed Tegretol and added Phenobarbital (Tr. 17, 103). On April 1, 2003, he prepared a short note for the claimant indicating she was his patient and suffered seizures, making her unable to drive (Tr. 102). By her May 2003 visit,

the claimant had suffered another seizure which had caused her to fall. She reported that at the time of the seizure she felt shaky and had pain in her ears (Tr. 18, 142). On May 16, 2003, Dr. Wallace completed a treating physician seizure description form describing the claimant's seizures as tonic-clonic-tonic and indicating their frequency was two to three times per year. He stated the claimant was taking Tegretol three times daily with a therapeutic blood level of 9.3. He did not know the duration of the claimant's latest seizure but did note she had a post-ictal period. Dr. Wallace found no neurological deficits and no recent electroencephalogram report was available. He described her seizures as diurnal and stated they altered her awareness (Tr. 18, 125-26). When the claimant returned to Dr. Wallace in June 2003, she had recently suffered a small seizure and was having at least one to two seizures per month. Dr. Wallace stated that the claimant had poor control of her seizures and could not afford the recommended medication, Dilantin. He had no samples to give her (Tr. 18, 138). In December 2003 the claimant suffered a seizure the morning of her appointment and had suffered another in the past week. As a result of her most recent seizure, the claimant fell and hit her face and bit the inside of her mouth and also hurt two of her toes. Dr. Wallace observed swelling of the claimant's left mandible, a bite inside her check, and wanted to take an X ray of the fourth and fifth toes on the claimant's right foot, but she refused. The claimant told Dr. Wallace she had forgotten to take her evening dose of Tegretol and that she still could not afford the Dilantin. In his assessment Dr. Wallace noted the claimant had suffered a seizure on Tegretol, and he elected to add Phenobarbital to her medications (Tr. 18, 171). When the claimant returned in January 2004, she had not yet started taking the Phenobarbital prescribed by Dr. Wallace (Tr. 170).

Dr. Wallace completed an RFC Questionnaire requested by claimant's counsel in

March 2004. He listed the claimant's diagnosis as seizure disorder and stated her prognosis was poor and her seizures would continue. He found the impairment could be expected to last at least twelve months and concluded the claimant's ability to work at a regular job on a sustained basis would be limited by her psychological limitations, limited vision, and the need to avoid bright light, flickering images, or blinking lights, temperature extremes, moving machinery, sharp objects, chemicals, gases, or hazards. Dr. Wallace estimated the claimant's impairment and her treatment thereof would result in her being absent from work more than three times per month. In Dr. Wallace's opinion, the claimant's seizure disorder prevented her from performing work on a sustained basis necessary to complete an eight-hour workday, five days per week (Tr. 176).

A medical opinion from a treating physician is entitled to controlling weight "if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins*, 350 F.3d at 1300 [quotations omitted]. If a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give the opinion by analyzing all of the factors set forth in 20 C.F.R. § 416.927. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.[927].'"), *quoting Watkins*, 350 F.3d at 1300 [quotation omitted]. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment

provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. "[I]f the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so." *Id*. at 1301 [quotations omitted].

The ALJ determined that Dr. Wallace's opinion that the claimant was disabled was not entitled to significant weight because: (i) the opinion was a generic statement with no supporting medical signs or laboratory findings; and, (ii) the opinion addressed the issue of disability which is reserved to the Commissioner. There was no error in this determination; an opinion that does not assess specific functional limitations but instead addresses issues reserved to the Commissioner (such as whether the claimant can work) is not entitled to the "controlling weight" analysis. *See Balthrop v. Barnhart*, 116 Fed.Appx. 929, 932-33 (10th Cir. 2004) [unpublished opinion] (finding that an opinion couched as conclusive on an issue reserved to the Commissioner is not a medical opinion entitled to controlling weight analysis), *citing* Soc. Sec. Rul. 96-5p. All the ALJ was required to do was to consider Dr. Wallace's opinion, which she clearly did here. *See* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *5 (indicating that an opinion on an issue reserved to the Commissioner is still evidence and cannot simply be disregarded).

However, the ALJ rejected Dr. Wallace's opinion that the claimant would need to be

absent from the workplace more than three days each month.[2] She did so because: (i) she found that the opinion was not supported by Dr. Wallace's treatment notes, *i. e.*, it could only be inferred by taking the claimant's statements at face value; and, (ii) she concluded that the alleged frequency of the claimant's seizures was caused by her being non-compliant with medication. While it is true that Dr. Wallace's more recent treatment records show only one or two seizures per month, it was improper for the ALJ to reject Dr. Wallace's opinion on the basis that he relied solely on the claimant's statements for his finding. *See Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician, especially when that physician is the regular treating doctor for the disability applicant."). The ALJ also failed to fully explain her finding that the frequency of the claimant's seizures was caused by her noncompliance with taking medication. If benefits are denied because of the claimant's failure to pursue treatment (which was the effect of the ALJ's rejection of Dr. Wallace's opinion), the ALJ must discuss the four-part test set forth in *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987): (i) whether treatment would have restored the claimant's ability to work; (ii) whether treatment was prescribed; (iii) whether treatment was refused; and, (iv) whether the excuse was justified. Here, the ALJ discussed only the claimant's repeated reports that she could not afford additional medication, *i. e.*, whether the failure to follow treatment was justified. *See, e.g., Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993) (An inability to pay for recommended treatment may

---

[2] The significance of this opinion is demonstrated by the testimony of the VE, who opined that while there were jobs a person could do even with one or two seizures per month, most employers would not accommodate the need for three days off from work each month (Tr. 205).

justify the failure to follow the treatment).  The ALJ determined the claimant's reports were not credible because she continued to smoke, *i.e.*, that she had the money to buy cigarettes but not her medication (Tr. 19), but the ALJ did not discuss any of the other factors.[3]

Further, the ALJ also impliedly rejected (without *any* explanation) many of the functional limitations assessed by Dr. Wallace, *i. e.*, psychological limitations, limited vision, and the need for the claimant to avoid bright light, flickering images, or blinking lights, temperature extremes, moving machinery, sharp objects, chemicals, gases, or hazards).[4] Indeed, the ALJ did not even discuss that Dr. Wallace assessed the claimant with these functional limitations, and she did not follow the treating physician analysis set forth in *Langley* and *Watkins* with regard to them.  For this reason, if for no other, the case must be reversed.  On remand, the ALJ should: (i) complete the analysis under *Frey* with regard to the claimant's noncompliance with medication; and, (ii) determine whether the functional limitations Dr. Wallace expressed in the RFC Questionnaire are entitled to controlling weight, and if necessary, she should then evaluate the opinion pursuant to the factors set forth in 20 C.F.R. § 416.927.

## Conclusion

---

[3]  The ALJ's failure in this regard was significant in that there was evidence the claimant's seizure disorder was poorly controlled, and she continued to have seizures even when she was on medication (Tr. 138, 171).  Furthermore, there was no indication given by Dr. Wallace that the Dilantin he recommended would control the claimant's seizures.

[4]  As noted above, the ALJ did include some of these limitations in the RFC determination, *e.g.*, the need to be free from unprotected heights, chemical fumes, moving machinery, and hazardous machinery (Tr. 19).

The undersigned Magistrate Judge finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Parties are herewith given ten (10) days from the date of this service to file with the Court Clerk any objections with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District District based on such findings.

**DATED** this 8th day of March, 2006.

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**